IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT JACKSON

FEBRUARY 1997 SESSION



FILED

July 28, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | |
| | ) | |
| APPELLEE, | ) | |
| | ) | No. 02-C-01-9604-CR-00125 |
| | ) | |
| | ) | Shelby County |
| v. | ) | |
| | ) | John P. Colton, Jr., Judge |
| | ) | |
| | ( | (First Degree Murder and Attempt to |
| | ) | Commit First Degree Murder) |
| ERIC D. WALLACE, | ) | |
| | ) | |
| APPELLANT. | ) | |


FOR THE APPELLANT:

W. Mark Ward
Assistant Public Defender
147 Jefferson Avenue, Suite 900
Memphis, TN 38103

Betty Jo Thomas
Assistant Public Defender
201 Poplar Avenue, Suite 2-01
Memphis, TN 38103

OF COUNSEL:

A C Wharton, Jr.
Shelby County Public Defender
201 Poplar Avenue, Suite 2-01
Memphis, TN 38103

FOR THE APPELLEE:

John Knox Walkup
Attorney General & Reporter
500 Charlotte Avenue
Nashville, TN 37243-0497

Daryl J. Brand
Assistant Attorney General
450 James Robertson Parkway
Nashville, TN 37243-0393

William L. Gibbons
District Attorney General
201 Poplar Avenue, Suite 3-01
Memphis, TN 38103

Jerry R. Kitchen
Assistant District Attorney General
201 Poplar Avenue, Suite 3-01
Memphis, TN 38103


OPINION FILED:_____

AFFIRMED

Joe B. Jones, Presiding Judge

# O P I N I O N

The appellant, Eric D. Wallace (defendant), was convicted of first degree murder and attempt to commit first degree murder, a Class A felony, by a jury of his peers. The defendant was sentenced to life in the Department of Correction for the offense of murder first degree. The trial court, finding the defendant to be a standard offender, imposed a Range I sentence consisting of confinement for fifteen (15) years in the Department of Correction for the offense of attempt to commit first degree murder. The sentences are to be served consecutively. In this Court the defendant contends (a) the evidence is insufficient to support his convictions and (b) the trial court abused its discretion by ordering the sentences to be served consecutively. After a thorough review of the record, the briefs submitted by the parties, and the law governing the issues presented for review, it is the opinion of this Court that the judgment of the trial court should be affirmed.

On the evening of July 10, 1992, the defendant and his brother, Percy Wallace, were walking along Woodlawn Street in Memphis. When they were passing the Weddle residence, they saw Jimmy Weddle, known in the neighborhood as "Jim Bodey," sitting on his front porch with several people visiting the Weddle residence. The Wallace brothers asked Weddle to meet them on the sidewalk. They asked Weddle if he knew of anyone who wanted to purchase illicit narcotics. Weddle told the Wallaces there was a woman and a man who desired to make a purchase. The Wallaces told Weddle to send the individuals to them. They then walked down the street until they came to the next intersection, Woodlawn and Looney.

Boo Boo Fox, who was driving through the neighborhood, stopped to purchase drugs from the Wallaces. Weddle walked to the intersection after Fox stopped his vehicle. Fox asked for a $20 rock of crack cocaine. He gave the Wallaces $15. He was told he did not have enough money to purchase the rock. Fox told the Wallaces he would go to the vehicle and get more money. Fox reached inside the vehicle, obtained a pistol, and told the Wallaces to give him all of the illicit narcotics and money they had on them. He also made them lay on the ground. Weddle began walking backwards toward his residence. Fox obtained the money and drugs, and he fired at the Wallaces. It appears

1

he grazed Percy Wallace. Fox then drove away.

When Fox left, the Wallaces ran toward their residence. Percy Wallace and the defendant each obtained a shotgun. They then went to the Weddle residence as they believed Weddle had assisted Fox in the robbery. Approximately ten to fifteen minutes expired between the robbery and the appearance of the Wallaces at the Weddle residence.

When the Wallaces arrived, Weddle and his guests were still sitting on the front porch. Percy Wallace asked, "Where is Jim Bodey?" He then exclaimed, "Jim Bodey you a dead man [sic]." When the people saw the Wallaces were armed, they began running into the Weddle residence. Percy Wallace fired at Weddle. The shot struck the exterior of the Weddle residence. Percy Wallace then forced his way into the Weddle residence and fired the shotgun two more times in an effort to shoot Weddle.

While Percy Wallace was attempting to reload his shotgun, he told the defendant to shoot anyone who exited the residence. Shortly thereafter, the victim, Venita Swift, who was celebrating her birthday at the Weddle residence, decided to exit the residence and go home. She lived across the street from the Weddles. As she ran from the residence with her arms raised above her head, the defendant stated: "Hold, bitch." Swift looked at the defendant, but she kept running. The defendant raised his shotgun and fired at Swift. She subsequently fell in the street. A few minutes later she died.

The buckshot from the shotgun struck Swift in the back below her left shoulder. The pellets continued through her body. Wadding from the shotgun blast was found under Swift's skin. Numerous pellets entered her body. The pellets went through the victim's left lung and struck her heart. The pellets also struck the victim's aorta, stomach, spleen, and liver. Two wadding wounds were found. The pathologist estimated that over 100 pellets entered the victim's body. He also estimated the shotgun was approximately ten to fifteen feet from the victim when it was fired. The pathologist testified the cause of death was the shotgun wound inflicted by the defendant.

The defendant was arrested by the police at his place of employment. He was given the Miranda warnings. He readily admitted he shot the victim. He cooperated with the police in an effort to obtain evidence of the murder. However, during the trial, the

2

defendant testified the police did not advise him of the <u>Miranda</u> warnings, and he did not read the statement before signing it. He emphatically denied shooting the victim. He testified he told the victim to "get down."

I.

The defendant contends the evidence is insufficient, as a matter of law, to support his conviction for felony murder. He argues the State of Tennessee failed to establish the elements of attempt to commit first degree murder, the felony used by the state to establish the crime.

A.

When an accused challenges the sufficiency of the convicting evidence, this Court must review the record to determine if the evidence adduced at trial is sufficient "to support the finding by the trier of fact of guilt beyond a reasonable doubt." Tenn. R. App. P. 13(e). This rule is applicable to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. <u>State v. Dykes</u>, 803 S.W.2d 250, 253 (Tenn. Crim. App.), <u>per</u>. <u>app</u>. <u>denied</u> (Tenn. 1990).

In determining the sufficiency of the convicting evidence, this Court does not reweigh or reevaluate the evidence. <u>State v. Matthews</u>, 805 S.W.2d 776, 779 (Tenn. Crim. App.), <u>per</u>. <u>app</u>. <u>denied</u> (Tenn. 1990). Nor may this Court substitute its inferences for those drawn by the trier of fact from circumstantial evidence. <u>Liakas v. State</u>, 199 Tenn. 298, 305, 286 S.W.2d 856, 859, <u>cert</u>. <u>denied</u>, 352 U.S. 845, 77 S.Ct. 39, 1 L.Ed.2d 49 (1956). To the contrary, this Court is required to afford the State of Tennessee the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. <u>State v. Cabbage</u>, 571 S.W.2d 832, 835 (Tenn. 1978).

Questions concerning the credibility of the witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact, not this Court. <u>Cabbage</u>, 571 S.W.2d at 835. In <u>State v. Grace</u>, 493 S.W.2d

3

474, 476 (Tenn. 1973), our Supreme Court said: "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State."

Since a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, the accused, as the appellant, has the burden in this Court of illustrating why the evidence is insufficient to support the verdicts returned by the trier of fact. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). This Court will not disturb a verdict of guilt due to the sufficiency of the evidence unless the facts contained in the record are insufficient, as a matter of law, for a rational trier of fact to find that the accused is guilty beyond a reasonable doubt. Tuggle, 639 S.W.2d at 914.

## B.

Before an accused can be convicted of murder in the perpetration of a felony, the State of Tennessee is required to prove beyond a reasonable doubt (a) the accused recklessly killed the victim and (b) the killing occurred during the perpetration, or attempt to perpetrate, one of the enumerated felonies set forth in the statute. Tenn. Code Ann. § 39-13-202(a)(2). In this case, the State of Tennessee's theory was the defendant recklessly killed the victim while the defendant and his brother were attempting to commit murder in the first degree. The intended victim was Jimmy Weddle.

The defendant does not challenge the fact he recklessly killed the victim. The evidence of this fact is overwhelming. The defendant gave the police officers a statement admitting he shot and killed the victim. In addition, several eyewitnesses testified the defendant was the person who shot and killed the victim. However, the defendant contends he did not commit the offense of attempt to commit murder first degree. He argues the State of Tennessee failed to establish the offense was committed with deliberation, which is to say "committed with coolness and reflection and without passion or provocation."

The question this Court must resolve is whether the element of deliberation was established by the evidence.

4

## C.

When this offense was committed, the term deliberation was defined by statute as an act "performed with a cool purpose." Tenn. Code Ann. § 39-13-201(b)(1). The defendant contends his status of being a victim of the robbery, the shooting, and his belief Weddle was acting in concert with Fox created excitement and passion. He argues this excitement and passion had not subsided prior to the criminal conduct in question.

In this case, the defendant and his brother, Percy, left the situs of the armed robbery-shooting, went to their residence, armed themselves with shotguns, and went to the Weddle residence. A rational jury could have found fifteen minutes elapsed from the time of the robbery-shooting and the defendant's appearance at the Weddle residence.

A reasonable and prudent person would have called the police and reported the crime. If the Wallaces reported the robbery-shooting to the police, they would have had to admit they were selling illicit narcotics, and Fox took their money and illicit narcotics. Thus, they did not report the crime to the police. However, the Wallaces felt compelled to establish there was a price to pay when someone committed a criminal act against them. In other words, the Wallaces wanted to deter such conduct in the future. They became the police, judge, jury, and executioner.

There was a concerted effort to kill Weddle. Percy Wallace fired at Weddle as he ran into the dwelling. He then forced his way into the dwelling where he fired twice. While Percy Wallace was attempting to reload the shotgun, he told the defendant to shoot anyone who left the dwelling. When the innocent victim left the residence with her hands held above her head, the defendant shot her in the back from a distance of ten to fifteen feet.

This Court concludes the evidence contained in the record supports a finding by a rational trier of fact the defendant recklessly shot the victim during an attempt to commit first degree murder beyond a reasonable doubt. Tenn. R. App. P. 13(e). See Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Based upon the facts contained in the record, the jury could reasonably conclude sufficient time had elapsed for any excitement or passion to dissipate.

This issue is without merit.

## II.

The defendant contends the trial court abused its discretion by ordering his sentences to be served consecutively. He argues the record fails to establish he "is an offender whose record of criminal activity is extensive." Tenn. Code Ann. § 40-35-115(b)(2).

## A.

When an accused challenges the manner of service of sentences, it is the duty of this Court to conduct a de novo review on the record with a presumption that "the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1994). The presumption does not apply to the legal conclusions reached by the trial court in sentencing the accused or to the determinations made by the trial court which are predicated upon uncontroverted facts. State v. Butler, 900 S.W.2d 305, 311 (Tenn. Crim. App. 1994); State v. Smith, 891 S.W.2d 922, 929 (Tenn. Crim. App.), per. app. denied (Tenn. 1994); State v. Bonestel, 871 S.W.2d 163, 166 (Tenn. Crim. App. 1993). However, this Court is required to give great weight to the trial court's determination of controverted facts as the trial court's determination of these facts is predicated upon the witnesses' demeanor and appearance when testifying.

In conducting a de novo review of a sentence, this Court must consider (a) any evidence received at the trial and/or sentencing hearing, (b) the presentence report, (c) the principles of sentencing, (d) the arguments of counsel relative to sentencing alternatives, (e) the nature and characteristics of the offense, (f) any mitigating or enhancing factors, (g) any statements made by the accused in his own behalf, and (h) the accused's potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-103 and -210;

6

State v. Scott, 735 S.W.2d 825, 829 (Tenn. Crim. App.), per. app. denied (Tenn. 1987).

The party challenging the sentences imposed by the trial court has the burden of establishing that the sentences are erroneous. Sentencing Commission Comments to Tenn. Code Ann. § 40-35-401; Ashby, 823 S.W.2d at 169; Butler, 900 S.W.2d at 311. In this case, the defendant has the burden of illustrating the sentences imposed by the trial court are erroneous.

**B.**

The record does not support a finding that the defendant has a record of extensive criminal activity. Tenn. Code Ann. § 40-35-115(b)(2). The presentence report establishes the defendant has been convicted of two counts of felony possession of cocaine with intent to sell, reckless driving, and driving while license suspended. No evidence was introduced during the sentencing hearing. It appears the trial court considered mere arrests and charges which were either nolle prossed or dismissed to support the finding of extensive criminal conduct. These entries in the presentence report should not have been considered.

Consecutive sentencing was warranted. Here, the defendant was on probation when he committed the offenses in question. Tenn. Code Ann. § 40-35-115(b)(6). The defendant was convicted of felony possession of cocaine on May 25, 1989 in the Criminal Court of Shelby County, Tennessee. He was placed on five years probation. The offense in question occurred on July 10, 1992.

Given the defendant's prior convictions, the outstanding indictments for a felony drug offense and another murder first degree, and the facts in this case, the citizens of Tennessee need to be protected from the defendant's future criminal conduct. The defendant has several drug-related convictions. Yet, he is only 25 years of age. The record establishes the defendant is beyond rehabilitation; and he will continue to engage in criminal activity if released into society. His history of criminal convictions supports this conclusion. See State v. Wilkerson, 905 S.W.2d 933, 939 (Tenn. 1995).

7

_____
JOE B. JONES, PRESIDING JUDGE

CONCUR:

8

_____
JOHN H. PEAY, JUDGE

_____
JOE G. RILEY, JUDGE